UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMERALD INVESTMENTS, LLC, | : | |
| RIPLEY LIGHT DEVELOPMENT, LLC, | : | |
| SAPPHIRE DEVELOPMENT, LLC, | : | CIVIL ACTION NO. |
| successor by merger to HIGHLAND | : | 3:05-cv-1598 (JCH) |
| CONNECTICUT INVESTMENT, LLC, | : | |
| STUART L. LONGMAN, and | : | |
| GAYLA LONGMAN | : | |
|         Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PORTER BRIDGE LOAN COMPANY | : | |
| f/k/a PORTER FINANCIAL CORPORATION, | : | |
| RESOLUTION CONSULTANTS, LLC and | : | JUNE 25, 2007 |
| FRANCIS A. ZARRO, JR., | : | |
|         Defendants. | : | |

**RULING ON PLAINTIFFS' MOTION FOR JUDGMENT ON VERDICT,
FOR AWARD OF ATTORNEY'S FEES, PUNITIVE DAMAGES AND
RESCISSION AND PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AS TO FRANCIS A. ZARRO, JR. [Doc. Nos. 111 & 48][1]**

I.    **INTRODUCTION**

The plaintiffs, Emerald Investments, LLC, Ripley Light Development, LLC,

Sapphire Development, LLC (successor by merger to Highland Connecticut Investment,

LLC), Stuart L. Longman, and Gayla Longman ("plaintiffs," collectively), brought this suit

against Porter Bridge Loan Company ("Porter Bridge") (f/k/a Porter Financial

---

[1]The court orders the Clerk's Office to change the case caption to reflect the caption in
this Ruling.

Corporation), Resolution Consultants, LLC,[2] and Francis A. Zarro, Jr.[3]  The plaintiffs'
claims concern allegations that Porter Bridge committed fraud in connection with
making two loans, on May 22, 2002 and on August 5, 2002, which were secured by
guaranty agreements and mortgages against properties located in Ridgefield and
Danbury, Connecticut.

Following trial, a jury returned a verdict on April 12, 2007, for the plaintiffs on
their fraudulent inducement, negligent misrepresentation, and Connecticut Unfair Trade
Practices Act ("CUTPA") claims.  See Verdict Form [Doc. No. 102].  The jury returned a
verdict against Porter Bridge in the amount of $122,000.00 in non-contract breach,
consequential damages, and it found that the plaintiffs were entitled to punitive
damages.  The plaintiffs did not seek other compensatory damages under their claims,
because they elected the equitable remedy of rescission instead, as was their right, and
have left it to the court to determine the scope of that rescissionary remedy.

Now before the court is the plaintiffs' application for an award of rescission,
attorney's fees pursuant to CUTPA, and punitive damages pursuant to CUTPA and/or
common law, filed on April 18, 2007 [Doc. No. 111].  The court will also address the
plaintiffs' Motion for Default Judgment as to defendant Zarro [Doc. No. 48].

---

[2]At a Pre-Trial Conference, the plaintiffs indicated that they were no longer pursuing
their claims against Resolution Consultants, LLC, and thus the court will treat them as
withdrawn.

[3]A default was entered against Zarro on April 21, 2004, by the Clerk of the United States
Bankruptcy Court for the District of Connecticut [U.S. Bankruptcy Court Doc. No. 58].  The
reference of this case by the District Court to the Bankruptcy Court was revoked, in order to
hold a jury trial, on August 24, 2005 [Doc. No. 3].

## II.    DISCUSSION

### A.    Rescission

"Under Connecticut law, the remedy of rescission and restitution is simply the unmaking of an agreement, i.e., 'a renouncement of the contract and any property obtained pursuant to the contract and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract.'" Aurigemma v. Arco Petroleum Products Co., 734 F. Supp. 1025, 1033 (D. Conn. 1990) (citing Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 299 (Conn. App. Ct. 1984)).  It is an equitable remedy that is triggered by a plaintiff's election of remedies.  See Wallenta v. Moscowitz, 81 Conn. App. 213, 240 (Conn. App. Ct. 2004).  Indeed, "'a definite election to rescind a contract is final and operates as a waiver of any claim for damages for any breach of the contract.'" Metcalfe v. Talarski, 213 Conn. 145, 159 (1989) (citations omitted).  The effect of rescission is, therefore, "to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken." Id.

"'The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides, and hence the general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in statu[s] quo.'" Wallenta, 81 Conn. App. at 242 (citations omitted).  Connecticut has adopted the "direct product" rule, which is defined as that product "which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor," as opposed to profits made by the

3

possessor "through its use or through renting the property to a third person." Id.

The plaintiffs in this case have elected the remedy of rescission and restitution. Because they have elected this remedy, and based on the jury verdict, the court hereby rescinds and declares null and void the various loan agreements relating to the May 22 and August 5, 2002 loans. See Plf.'s Memorandum in Support ("Mem. in Supp.") at 2-4 (citing agreements) [Doc. No. 111]. However, because the remedy the plaintiffs seek is to be "'restored to [their] original position prior to loss or injury,'" Wallenta, 81 Conn. App. at 241 (citations omitted), these loan documents are voided on the condition that the plaintiffs pay Porter Bridge the restitutionary balance, that is, the amount necessary to return the parties to the position they were in prior to entering into these agreements.

As a starting amount of the restitutionary analysis, the parties agreed at oral argument, held on May 25, 2007, to the sum of $1,021,153.84,[4] which reflects the gross loan amount ($1,575,000.00), minus the amount to be credited to the plaintiffs for the various fees and extension payments they paid to the defendants ($553,846.16) out of the loan proceeds. See Def.'s Memorandum in Opposition ("Mem. in Opp.") at 7-8 [Doc. No. 114]. However, while agreeing on a starting amount, the parties disagree about the extent to which, if any, interest should be awarded to Porter Bridge based on

---

[4]The court does not find persuasive the plaintiffs' argument that rescission should be based only on the $300,000.00 "actually lent by Porter Bridge," rather than the full amount loaned. See Plf.'s Mem. in Supp. at 8 & n.7. Regardless of whether Porter Bridge, or some third-party lender, was the actual source of the money that flowed to the plaintiffs, all the loan agreements were between the plaintiffs and Porter Bridge.

the amount lent to the plaintiffs.[5]

Both parties rely on <u>Woodling v. Garrett Corp.</u>, 813 F.2d 543 (2d Cir. 1987), a wrongful death action, to support their arguments as to why, or why not, Porter Bridge is entitled to interest. <u>See</u> Def.'s Mem. in Opp. at 4-5; Plf.'s Reply at 1-2 [Doc. No. 121]. In <u>Woodling</u>, the court was concerned with whether interest should be paid on money returned in order to obtain rescission. 813 F.2d at 561-62. As the court explained: "A plaintiff seeking rescission of a contract must disgorge 'the fruits of the bargain. . . . Such 'fruits' include benefits derived from possession of the property conveyed, . . . such as interest on moneys conveyed, . . . or net profits from a conveyed business." <u>Id.</u> (internal citations omitted). Consequently, the court vacated the district court's judgment insofar as it "failed to require [the plaintiff] to pay [the third-party defendant] interest on the sum received in consideration for executing the rescinded Release agreement." <u>Id.</u> at 562. As to the amount of interest that must be paid, the court stated that, "[w]hen rescission is based on misrepresentation, the general rule appears to be that the maker of the misrepresentation is entitled to recover no more than the legal rate of interest and that he must bear the risk that the person to whom the misrepresentation was made may have earned less than that rate of interest." <u>Id.</u> (citing Restatement of Restitution § 159 illustration 1; Restatement (Second) of Restitution § 29 comment a (Tent. Draft No. 1, 1983)). It required the plaintiff to pay the

---

[5]The court notes that Porter Bridge argued at oral argument that the interest arithmetic should be conducted <u>before</u> any subtraction takes place. However, the court finds that Porter Bridge has no right to interest on the gross amount, but only on the amount received by the plaintiffs and from which they in some way benefitted. <u>See</u> <u>infra</u> at 5.

defendant interest on the $250,000 "at the rate of interest she received or at Connecticut's legal rate, whichever is lower." Id.

Pursuant to Woodling, the court agrees that Porter Bridge is entitled to some interest on the money it loaned the plaintiffs, but only on that portion of the money from which the plaintiffs benefitted. See id. at 561. Thus, it finds that Porter Bridge is only entitled to interest on the amount of money that the plaintiffs used to pay off other loans, and not on any sums that went directly into the plaintiffs' South Carolina project. The court finds that this is reasonable, based on the fact that the plaintiffs received a benefit from using the money they borrowed from Porter Bridge to pay off their outstanding debts, while they received no benefit from the money that went directly into the unsuccessful South Carolina project. This former sum is the combination of the Blumenfeld payoff ($316,995.00), the Dahill payoff ($73,445.28), and the Union Savings ($213,796.95). See Plf.'s Mem. in Supp. at Ex. A. Thus, Porter Bridge is entitled to interest on $604,237.23, but is not entitled to interest on the remaining $416,916.61, which sums went directly into the South Carolina project.[6]

Regarding this $604,237.23 on which Porter Bridge is entitled to interest, the parties dispute which rate of interest applies. Porter Bridge cites to Conn. Gen. Stat. §

---

[6]The plaintiffs received $300,000 from the first loan, of which all of but $2000 went directly into the South Carolina development project, with $2000 constituting an advance to Porter Bridge's attorneys. See Plf.'s Mem. in Supp. at Ex. A. Of the $211,916.61 constituting that portion of the second loan received by plaintiff Ripley, $30,000 went toward legal fees to Mark Stern and $63,000 constituted four extension and interest fees relating to this second loan. Id. The remaining $118,916.61 was used as working capital for development of the project. Thus, the total sum going into the South Carolina project was $416,916.61 ($298,000 plus $118,916.61), and on this the court finds that Porter Bridge is not entitled to interest.

37-3a, entitled "Rate recoverable as damages," which provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." See Def.'s Mem. in Opp. at 5. The plaintiffs cite to Conn. Gen. Stat. § 37-1, entitled "Legal Rate," which provides that "[t]he compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year." See Plf.'s Reply at 3.

The court agrees with the plaintiffs that the eight percent interest rate, as set forth in Conn. Gen. Stat. § 37-1(a), is applicable here, and not the ten percent as argued by Porter Bridge.[7] Section 37-3a(a) involves prejudgment interest, and "its purpose is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants." Paulus v. LaSala, 56 Conn. App. 139, 151 (Conn. App. Ct. 1999); see also Harris Calorific Sales Co. v. Manifold Systems, Inc., 18 Conn. App. 559, 566 (Conn. App. Ct. 1989) ("The real question . . . is whether the detention of the money is or is not wrongful under the circumstances.") (citations omitted). As the plaintiffs persuasively argue, this provision does not apply to their case, "because there is no evidence in the record that Plaintiffs wrongfully withheld any monies from Porter

---

[7]The court disagrees with the plaintiffs' argument that, in fact, the interest rate should be zero because Porter Bridge failed to prove that the plaintiffs actually earned any interest on the money that was loaned to them. See Plf.'s Reply at 3 n.1. Because the court believes the burden was on the plaintiffs to come forward with evidence that the actual rate of interest they received was less than the "legal rate," without such evidence the court finds that the eight percent interest rate under Conn. Gen. Stat. §37-1(a) applies in this case.

Bridge." See Plf.'s Reply at 3. Thus, the eight percent "Legal Rate," as provided for in Conn. Gen. Stat. § 37-1(a), will apply to the sum of $604,237.23, beginning on the date of the second loan agreement, August 5, 2002, which is when this sum was disbursed, and running to the entry of judgment, on June 25, 2007. Therefore, Porter Bridge is entitled to 4 years, 10 months, and 20 days of interest,[8] which results in $236,317.18. Thus, the rescissionary balance comes out to a combination of $604,237.23 plus $236,317.18 in interest, and $416,916.61, or a total of $1,257,471.02.[9]

## B. Attorney's Fees and Costs

The plaintiffs also seek an award of attorney's fees and costs under CUTPA. Conn. Gen. Stat. § 42-110g(d) provides that, "[i]n any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." Section (g) of this provision further provides that, "[i]n any action brought by a person under this section there shall be a right to a jury trial except with respect to . . . the award of costs, reasonable attorney's fees and injunctive or other equitable relief under subsection (d) of this section." Id. at § 42-110g(g). Thus, CUTPA expressly requires that such an award be made by the

---

[8]The statute states that, "in computing interest, three hundred and sixty days may be considered to be a year." Conn. Gen. Stat. § 37-1(a).

[9]The court will not follow the plaintiffs' suggestion that interest be awarded only after consequential damages, attorney's fees, and punitive damages are deducted from the amount received by the plaintiffs from Porter Bridge. See Plf.'s Reply at 4. The court finds that the equitable remedy of rescission mandates a restoration of the status quo, which includes payment of interest on any money from which the plaintiffs benefitted. See Woodling, 813 F.2d at 561. The awards of consequential damages, attorney's fees, and punitive damages are separate relief, which should be considered after the restitutionary analysis.

court, be made to "the plaintiff," and be made in addition to other relief provided by CUTPA. Id. at § 42-110g(d). "The ability to recover both attorneys' fees . . . and punitive damages . . . enhances the private CUTPA remedy and serves to encourage private CUTPA litigation." Hinchliffe v. Am. Motors Corp., 184 Conn. 607, 617 (1981) (citations omitted); see also Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22, 33 (1987).

It is also well-established that the award is in the discretion of the trial court. "The statute contains no standard by which a court is to award attorney's fees, thus leaving it to the sole discretion of the trial court to determine if attorney's fees should be awarded and the amount of such an award." Staehle v. Michael's Garage, Inc., 35 Conn. App. 455, 461 (1994). "'Awarding . . . attorney's fees under CUTPA is discretionary; . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done.'" Id. (quoting Gargano v. Heyman, 203 Conn. 616, 622 (1987)); cf. Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir. 1999) ("'The standard of review of an award of attorney's fees is highly deferential to the district court.' . . . This standard takes into account that the amount sought for attorney's fees is dependent on the unique facts of each case. . . . Attorney's fees must be reasonable in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion." (citations omitted)). However, it is the express statutory proscription under CUTPA that whether to award fees, and if so how much, is not to be based on the dollar amount of the recovery. Jacques of All Trades Corp. v. Brown, 57 Conn. App. 189, 197 (Conn. App. Ct. 2000) (citing Conn. Gen. Stat. § 42-110g(d)).

In determining the reasonableness of attorney's fees under CUTPA, courts have generally used the lodestar method, in combination with the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1971).[10] See, e.g., Fabri v. United Techs. Int'l., Inc., 193 F. Supp. 2d 480, 487 (D. Conn. 2002) ("Whether a trial court uses the lodestar method as an aid, a trial court should apply the twelve Johnson factors."); Steiger v. J.S. Builders, Inc., 39 Conn. App. 32, 39 (Conn. App. Ct. 1995) (discussing appropriateness of Johnson factors in calculating reasonable attorney's fees under CUTPA).[11]

In a very recent Second Circuit decision, Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162 (2d Cir. 2007), the court discussed the two methods courts have used in calculating reasonable fees – the "lodestar" method, which is "based upon 'the hours reasonably spent by counsel . . . multiplied the reasonable hourly rate,'" Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted), and the twelve-factor analysis as developed in Johnson. As the Second Circuit explained, these two

---

[10]These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-119.

[11]Although the Connecticut Supreme Court has referred to Rule 1.5(a) of the Rules of Professional Conduct for the factors to consider in calculating reasonable attorney's fees, those eight factors overlap considerably with the Johnson factors; moreover, the Court cited Steiger for an analysis of reasonable attorney's fees under CUTPA. See Sorrentino v. All Seasons Servs., Inc., 245 Conn. 756, 775 (1998).

methods "considered substantially the same set of variables – just at a different point in the fee-calculation process." Arbor Hill, 484 F.3d at 166. In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the Supreme Court "adopted the lodestar method in principle . . . without, however, fully abandoning the Johnson method." Arbor Hill, 484 F.3d at 167. According to the Second Circuit, however, the simultaneous application of these methods "proved to be in tension," and subsequent circuit courts "struggled with the nettlesome interplay between the lodestar method and the Johnson method." Id. at 167-68.

In an attempt to clear up this "confusion," id. at 168, the Second Circuit's recent opinion abandons the use of the term "lodestar." Instead, it explains that the better course is:

> for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.[12] The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with

---

[12]The Second Circuit directs the district court, "in determining what a reasonable, paying client would be willing to pay, [to] consider factors including, but not limited to, the complexity and difficulty of the case, the available and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation." Id. at *3-4.

11

the case. The district court should then use that hourly rate to calculate what can be properly termed the "presumptively reasonable fee."

Id. at 169. "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." Chan v. Sung Yue Tung Corp., 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007).

      1.    Reasonable Hourly Rate

It is with these principles in mind that the court will determine "the rate a reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." Arbor Hill, 484 F.3d at 173. The plaintiffs request an hourly rate of $295 to $350 for Attorney Gary Klein and $325 to $400 for Attorney Peter Nolin, as well as lesser rates for other attorneys. See Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 14. Porter Bridge challenges these rates as too high; moreover, it argues that it was unnecessary to have two partners working on this case. See Def.'s Mem. in Opp. at 14-15.

The court finds these rates to be reasonable. Both Attorneys Klein and Nolin are able and experienced. Attorneys Klein and Nolin have practiced law for 16 and 26 years, respectively, and are specialized in commercial litigation, an area of practice that can be complex and challenging, as was this case. They also have extensive trial experience. See Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶¶ 7, 9. The court is aware, based on experience, that the rates charged in Fairfield County, which is where both plaintiffs' and Porter Bridge's counsel are located, are generally higher than the rates

charged in Hartford or New Haven Counties. It finds that the rates are reasonable and reflect the experience and expertise of counsel, and also reflect what a reasonable client would pay in Fairfield County. Indeed, these are the rates at which the plaintiffs agreed to engage counsel.

The court also disagrees with Porter Bridge that having two partners assigned to the case was unnecessary, and thus it rejects Porter Bridge's suggestion that the rate of Attorney Nolin, as well as those of the other plaintiffs' attorneys working on this case with the exception of Attorney Klein, should be reduced to an associate's rate of $150 per hour. See Def.'s Mem. in Opp. at 15. As Arbor Hill directs a district court to do, 484 F.3d at 163-64, the court has taken into consideration that the plaintiffs requested two partners to try their case; moreover, in contrast to defense counsel, plaintiffs' counsel limited the use of other attorneys in their firm. See Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 14. Further, there was no unnecessary duplication by Attorneys Nolin and Klein. Thus, the court concludes that two partners were not unreasonable in this case, and determines that the hourly rates claimed are reasonable.

2.    Reasonable Number of Hours

"After determining the reasonable hourly rates for each attorney, the Court must examine the hours expended by counsel to determine their reasonableness, excluding 'excessive, redundant, or otherwise unnecessary' hours." Chan, 2007 WL 1373118, at *5 (citing Hensley, 461 U.S. at 434). The plaintiffs' attorneys seek compensation for 1498.57 hours, the amount they claim to have spent on this case as of May 22, 2007. See Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 13; Plf.'s Second Suppl. Aff. at ¶ 5

[Doc. No. 135]. In reviewing the hours spent by the plaintiffs' attorneys, the "task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "Plaintiff's counsel is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley, 461 U.S. at 437 n.2.

Porter Bridge argues that some entries are duplicative because two partners were assigned to this matter, and because too many associates were assigned to the case. See Def.'s Mem. in Opp. at 15-16. While this case could have been tried by one partner, the court does not find it unreasonable to have had two. Indeed, given the numerous legal and factual issues presented in this case, the use of two partners and a limited number of associates was reasonable.[13] Moreover, the plaintiffs have explained that no double billing occurred.[14] See Plf.'s Reply at 6.

Having reviewed the materials submitted and having an appreciation for the number and complexity of the issues involved in this litigation, the court concludes that

---

[13]The plaintiffs' counsel's firm, Sandak Hennessey & Greco, LLP, billed the work performed by three partners, three associates, and a law student. See Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 14. However, Attorney Michael Sweeney, the third partner assigned to this case, only billed 2.25 hours to this matter. Id.
    Porter Bridge's counsel's firm, Shipman & Goodwin, LLP, billed the work of eight partners, fifteen associates, and ten paralegals to this matter. See Plf.'s Suppl. Reply at 3 & Ex. A [Doc. No. 125].

[14]The court notes that Porter Bridge does not attack any particular time entries or categories of billing claimed by the plaintiffs.

the amount of hours billed by the various timekeepers is reasonable.

### 3. Presumptively Reasonable Fees Calculation

Based on the foregoing analysis, the calculation of presumptively reasonable fees will be as requested by the plaintiffs, that is, $486,068.78 as of May 22, 2007.[15] <u>See</u> Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 23; Plf.'s Second Suppl. Aff. at ¶ 3.

### 4. Costs and Expenses

In addition to their request for attorney's fees, the plaintiffs also seek to recover costs and expenses associated with their claims, which total $18,131.26 as of May 22, 2007. <u>See</u> Plf.'s Mem. in Supp. at Ex. H, Klein Aff. at ¶ 23; Plf.'s Second Suppl. Aff. at ¶ 3. CUTPA permits for an award of costs in addition to attorney's fees and other relief. <u>See</u> Conn. Gen. Stat. § 42-110g(g). Courts within the Second Circuit have generally held that "in fee applications where an attorney's fee is authorized by statute, reasonable costs and expenses will be awarded to the extent that they are chargeable to a paying client." <u>See, e.g.</u>, <u>Clark v. Phillips</u>, 965 F. Supp. 331, 338 (N.D.N.Y. 1997) (citing <u>Reichman v. Bonsignore, Brignati & Mazzotta, P.C.</u>, 818 F.2d 278, 283 (2d Cir. 1987)).

The court finds the following costs to be reasonable in connection with obtaining the claims against Porter Bridge. The $18,098.51 incurred, as of May 22, 2007, by Attorneys' Klein and Nolin's law firm, Sandak, Hennessy & Greco, LLP, for computer-assisted research, filing fees, transcript fees, service of process fees, parking, mileage,

---

[15]The plaintiffs did not seek an upward adjustment of the legal fees incurred pursuant to <u>Hensley</u>, 461 U.S. at 433.

and messenger services.  Attorney Klein, in his Affidavit, indicated that his firm applied

no "mark-up" to these costs.  <u>See</u> Klein Aff. at ¶ 13.  The plaintiffs further incurred

$32.75 in costs, which were incurred by the firm of Reid and Riege, P.C., which

previously represented plaintiff Barbara Katz, Chapter 11 Trustee of Sapphire

Development, LLC.  <u>Id.</u> at ¶ 16.

### C.    Punitive Damages

Under CUTPA, a plaintiff may recover punitive damages if the defendant's

conduct is found to be recklessly indifferent, intentional and wanton, malicious, violent,

or motivated by evil.  <u>Gargano</u>, 203 Conn. at 622.  In this case, the jury found that the

plaintiffs were entitled to punitive damages, although the amount of punitive damages

to award was left for the court to decide.  <u>See</u> Conn. Gen. Stat. § 42-110g(a) ("The

court may, in its discretion, award punitive damages and may provide such equitable

relief as it deems necessary or proper."); <u>id.</u> at § 42-110g(g) ("In any action brought by a

person under this section there shall be a right to a jury trial except with respect to the

award of punitive damages under subsection (a) of this section.").  Awarding punitive

damages is discretionary, and "the exercise of such discretion will not ordinarily be

interfered with on appeal unless the abuse is manifest or injustice appears to have

been done."  <u>Gargano</u>, 203 Conn. at 622.

A plaintiff may recover punitive damages under CUTPA even if he does not

plead or prove compensatory damages, <u>see</u> <u>Associated Inv. Co. Ltd. P'ship v. Williams</u>

<u>Assocs. IV</u>, 230 Conn. 148, 157, 160-61 & n.16 (1994), or even where he has failed to

prove, or, as in this case, has chosen to forego proving, any actual damages resulting

16

from a violation of CUTPA, see Tillquist v. Ford Motor Credit Co., 714 F.Supp. 607, 617 (D. Conn. 1989).  Moreover, a court may also award punitive damages and attorney's fees to a plaintiff who has been awarded only nominal damages resulting from an unfair or deceptive practice under CUTPA.  Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 689-90 (1995) (Berdon, J., concurring).  Given this broadly remedial statutory structure, the Connecticut Supreme Court has observed that "CUTPA creates an essentially equitable cause of action."  Associated, 230 Conn. at 155.

CUTPA itself "provides no guidance as to a method for determining the amount of a punitive damages award."  Staehle, 35 Conn. App. at 463.  Nevertheless, "several methods have gained acceptance by the courts" in Connecticut.  Id.  By common practice, "courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages."  Perkins v. Colonial Cemeteries, Inc., 53 Conn. App. 646, 649 (Conn. App. Ct. 1999) (citing Staehle, 35 Conn. App. at 462-63).  Many courts have followed the lead of the district court in Bailey Employment Sys. v. Hahn, 545 F. Supp. 62, 73 (D. Conn. 1982), in doubling the amount of actual or compensatory damages.[16]  See, e.g., Barco Auto Leasing Corp. v. House, 202 Conn. 106, 110 n.3 (1987).

This method renders little assistance, however, where a plaintiff has elected to forego seeking compensatory damages, as have the plaintiffs in this case.  The court

---

[16]Despite the general practice of Connecticut state courts to award an amount equal to or double the amount of compensatory damages awarded a plaintiff under CUTPA, "CUTPA neither sets out any formula for arriving at the amount nor sets a maximum of double or treble damages for the punitive damages awarded to deter future conduct."  Lenz v. CNA Assurance Co., 42 Conn. Supp. 514, 515 (Conn. Super. Ct. 1993).

finds such circumstances to be similar to those where a plaintiff has been awarded only nominal damages, in which Connecticut courts have implicitly recognized that the "two times actual" standard is inapplicable in such cases by awarding as much as $30,000 and as little as $500 in punitive damages to plaintiffs that received either one dollar or nothing in nominal damages resulting from CUTPA violations.[17]

In the absence of an explicit formula or prescribed method for determining the amount of punitive damages in this case, the court takes as its guiding principle that the purpose of awarding punitive damages under CUTPA is to deter future deceptive or unfair business practices by the defendants and others. Tingley Sys., Inc. v. Norse Sys., Inc., 49 F.3d 93, 96 (2d Cir.1995). Thus, federal courts in this district have noted that, although "Section 42-110g does not specify how punitive damages are to be measured . . . the award should serve the broad remedial goals of eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." Societa Bario E. Derivati v. Kaystone Chem., Inc., 1998 WL 182563, at *10 (D. Conn. 1998) (citations and internal quotation marks omitted)). Similarly, Connecticut courts have also held that a defendant's financial standing is relevant to a determination of the amount of punitive damages to award for a CUTPA violation. See Lenz, 42 Conn. Supp. at 515 ("The issue then of the defendant's financial circumstances is relevant

---

[17]See, e.g., Tillquist, 714 F. Supp. at 617 (plaintiff was awarded no compensatory damages and $500 in punitive damages); Calandro v. Allstate Ins. Co., 1998 WL 811605, at *11 (Conn. Super. Ct. 1998) (awarding plaintiff $1 in compensatory and $8,000 in punitive damages); Blue Cross & Blue Shield of Conn., Inc. v. DiMartino, 1991 WL 127094, at *5-*6 (Conn. Super. Ct. 1991) (awarding Blue Cross & Blue Shield no compensatory damages and $30,000 in punitive damages).

and material to the deterrent non-common law punitive damages that the plaintiff would be required to prove under the CUTPA count."). Accordingly, a punitive damages award under CUTPA should take account of the financial status and size of the defendant to ensure that the damage award will have the deterrent effect on the defendant and others that it is designed to achieve. See generally R. Langer, J. Morgan & D. Belt, 12 Connecticut Practice Series: Unfair Trade Practices § 6.11, pp. 490-93 (2003).

With respect to Porter Bridge's financial standing, the plaintiffs have pointed the court to Porter Bridge's own website, which states that the company is "one of the most active bridge loan lenders in the country." See Plf.'s Mem. in Supp. at Ex. I. Porter Bridge has been in business since 1994, and lends in all 50 states as well as in Mexico. Id. It charges interest rates of between 12 % to 18 % and points as needed, its loans are secured with tangible collateral, and it generally funds the loans within ten working days after receiving loan documents. Id. Porter Capital Corp., which is Porter Bridge's sister company and trade name, has over $465 million in assets under management, and it is expected to grow by tens of millions of dollars a year. Id. These facts, taken from Porter Bridge's website, indicate to the court Porter Bridge's good financial status, which is a relevant factor in this court's determination of the amount of punitive damages to award the plaintiff for Porter Bridge's CUTPA violation. See Lenz, 42 Conn. Supp. at 515.

The court concludes that the proper measure of punitive damages in this case is based on the jury-awarded consequential damages, plus that portion of the

19

rescissionary amount that was lost in the failed South Carolina development and monies paid to the defendants. These figures evidence the harm done by Porter Bridge's fraud. If the amount of punitive damages were to be based only on the jury award, it would fail to reflect the damages the plaintiffs suffered and sought to ameliorate by electing the rescissionary remedy. However, the different components of that restitutionary amount can be distinguished. See supra at 6. The full restitutionary amount would be an inappropriate number on which to base punitive damages because it includes money that benefitted the plaintiffs. While it might not have been when the plaintiffs would have chosen to pay off their other debt, they were able to do so with part of the loan proceeds in this case. The portion that went into the South Carolina project as a result of Porter Bridge's fraud, however, was of no benefit to the plaintiffs. In addition, the origination, extension, and other fees imposed by Porter Bridge were incurred by the plaintiffs as a direct result of Porter Bridge's fraud.

Taking the sum of these figures as a measure of the fraudulent conduct of Porter Bridge, the court determines to award $1,100,000.00 in punitive damages, or approximately one times that sum. This figure reflects damage to the plaintiffs due to Porter Bridge's fraud and for which the plaintiffs received no benefit. It is sufficient to have the deterrent effect the statute was designed to create; any greater number, in this court's view, would yield an award beyond that necessary to achieve that effect and would be disproportionate to Porter Bridge's financial standing.

With respect to punitive damages under their fraudulent inducement claim, unlike under CUTPA, common law punitive damages in Connecticut are "limited to the

plaintiff's attorney's fees and nontaxable costs, and thus serve a function that is both compensatory and punitive." Bodner v. United Services Auto. Ass'n, 222 Conn. 480, 492 (1992). Thus, the plaintiffs' punitive damages award under their common law claim is $504,200.04.

## III.    CONCLUSION[18]

Based on the foregoing, the court awards to the plaintiffs $122,000.00 on Counts I, II and IV. Further, it awards to the plaintiffs on their CUTPA claim (Count IV) $486,068.78 in attorney's fees and $18,131.26 in costs, for a total of $504,200.04. It also awards to the plaintiffs $1,100,000.00 in punitive damages under CUTPA (Count IV). It awards $504,200.04 in punitive damages under the common claim of fraudulent inducement (Count I). Finally, under Counts I, II, and IV, it rescinds the various loan agreements and renders them null and void on the condition that the plaintiffs pay Porter Bridge the amount of $1,257,471.02 in restitution. That amount is hereby declared to have been satisfied by set off with part of the amount owed to the plaintiffs by the defendants. Accordingly, a monetary judgment will enter in the plaintiffs' favor in the amount of $468,729.02 on Count IV only ($1,726,200.04 less $1,257,471.02).[19]

With respect to the Motion for Default Judgment as to Zarro [**Doc. No. 48**], judgment will be entered against Zarro on the same basis as it is entered against Porter

_____

[18]The court is entering an Order on the same date as this Ruling that effectuates the Ruling with details pertinent to the entry of Judgment.

[19]The amounts awarded to the plaintiffs on Counts I ($626,200.04) and II ($122,000.00) are less than the restitutionary amount ($1,257,471.02); therefore, the plaintiffs are not entitled to a monetary award on those counts.

Bridge, jointly and severally.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of June, 2007.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge